IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ALISON M. PLAHITKO**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**COMMUNITY HEALTH NETWORK, INC.**<br><br>Defendant. | Case No. 1:25-cv-520<br><br><br><br><br>**FLSA COLLECTIVE ACTION COMPLAINT** |

*FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

Plaintiff Alison M. Plahitko ("Plahitko" or "Plaintiff"), individually and on behalf of all others similarly situated, for her Complaint against Defendant Community Hospital Network ("Defendant"), states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiff brings this case individually and on behalf of other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

## PARTIES

5. Plaintiff Plahitko is an adult individual residing in Indianapolis, Marion County, Indiana. Plaintiff Plahitko was employed by Defendant as a nurse in and around the Indianapolis, Marion County, Indiana area from October 2002 until Defendant involuntarily terminated Plahitkos employment on January 24, 2025. In her last position, Plahitko worked for Defendant as a FMLA Case Manager.

6. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant as a non-exempt employee who was paid on an hourly basis.

7. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

8. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

9. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

10. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

11. Plaintiff's written Consent to Join this Action is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

12. Defendant provides healthcare services at approximately 200 locations, including hospitals throughout the State of Indiana. Defendant is believed to be headquartered at 1500 North Ritter, Indianapolis, Indiana 46219.

**Unlawful Rounding of Kronos Time Clock Punch Facts**

13. All of Plaintiff's and her similarly situated coworkers' compensable work time was recorded on Defendant's Kronos time clocks. While all recorded, compensable work hours were recorded on Defendant's Kronos time clock, Defendant rounded those Kronos time punches and did not pay wages for all compensable and recorded work time.

14. Plaintiff and her similarly situated coworkers are and were common victims of Defendant's compensation scheme whereby it illegally and impermissibly rounded time clock punches and log in entries in its favor and in a manner that failed to pay Plaintiff and all similarly situated coworkers for significant compensable work hours.

15. Defendant has created a compensation scheme through a series of computer software commands (time punch rounding commands) programmed into Defendant's time clock software and payroll software, coupled with multiple company disciplinary rules regarding Kronos clock usage and tardiness that ensure that Defendant will always benefit from its time punch rounding scheme and guarantee that Defendant will take an impermissible and unfair financial advantage over its employees by rounding in a non-neutral fashion that results in enormous sums of unpaid hourly wages owed to Defendant's hourly paid employees on a cumulative basis.

16. At all times relevant, for Plaintiff and all of Defendant's hourly-paid employees, Defendant used and uses an electronic time keeping system. Employees clock in by swiping employee badges in a computerized time clock or logging in to a program on a computer. Using this time clock or log in function, for each shift, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ended his/her work shift. If Defendant paid its non-exempt, hourly-paid employees wages and overtime based upon

its machine(s)' actual time punches and log in entries, Defendant would likely have paid wages in compliance with the FLSA and other state wage laws.

17. Defendant does not pay its employees' hourly-paid wages based upon actual employee time worked and based upon Defendant's own time punch/log in records.

18. Importantly, Defendant does not record its non-exempt, hourly-paid employees' work time in any other way. The only time records Defendant has to base its payment of wages are the time records generated by its electronic time clocks and programs.

19. Defendant has created a policy and practice whereby it significantly adjusts downward and shaves time from its non-exempt, hourly-paid employees' time records and pays its employees wages for less than their full time worked and full time reported on Defendant's own time clocks and computer programs.

20. Based upon its long-standing policy and practice of manipulating and downwardly adjusting time from its non-exempt, hourly-paid employee time records, Defendant has been systematically underpaying its employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendant's Indiana employees based upon Defendant's non-neutral and self-serving rounding scheme is very substantial on a daily, weekly and annual basis.

21. Defendant's rounding can be determined from the face of Defendant's employees' time punch records and corresponding pay stubs. Defendant rounds all time punches and log in entries in its favor and to employees' detriment through a series of computer program commands written in the Kronos software along with a series of written rules distributed to employees governing discipline and Kronos time clock use. All rounding functions are programmed into Defendant's time clock and corresponding pay roll software and all rounding functions favor Defendant and harm employees.

22.     Defendant's written Kronos time clock rules and disciplinary rules distributed to Plaintiff and her similarly situated coworkers include the following policies:

"Preparation, Verification, and Submission of Employee Time Record

POLICY STATEMENTS:

It is the policy of Community Health Network that:

- the Kronos timecard is the official record of hours worked for Community employees and determines the amount of pay the employee shall receive. The timecard is also the official records of hours absent from regularly scheduled work and utilization of sick time.

- Cost center managers are responsible to ensure that all time for their employees is accurately recorded and coded on Kronos timecard in accordance with approved Human Resources Policy and Procedure.

- Employees are responsible for reporting and recording their time in accordance with procedures established in their department.

d.   **Non-Exempt status employees** must maintain a time record that reflects all their hours for the pay period. Employees paid on the basis of hours worked are required to clock-in and clock-out by swiping their ID Badge at the assigned time clock, or by telephone or web access if appropriate. Federal and state regulations require that the timecard accurately reflect the time the employee started work and the time the employee stopped work. Employees are to clock out when they leave work (example: leave workplace for a break, meal, doctor's appointment) and clock in when they return. Do not omit time worked under any circumstance. An employee on LOA (or not working for some reason) needs to have 80 hours if 1.0 FTE (or fte equivalent) of exception time such as PTO Sick or Absent Without Pay, etc. recorded in Kronos.

G.   Time-Clock Punches: Employees must clock-in not earlier than seven minutes before the start of the shift, unless authorized to start work earlier and employees should not clock-out (quit work) later than 7 minutes after the end of the shift unless it is authorized by the employee's supervisor.

L.   Time Entered on Kronos: Kronos will automatically calculate time worked to the nearest 1/4 hour based on the clock-in and clock-out time and the employee's Pay Rule. Other time that is entered by the Editor/Approver should be entered as hours and minutes to the closest 1/4 hour (i.e. 4 ½ hours should be entered as 4.50). Convert time added in Kronos to the closest 1/4 hours as follows:

   a.   1 to 7 minutes - do not covert. Enter full hour
   b.   8 to 22 minutes - convert to 1/4 hour (.25)

      c.      23 to 27 minutes - convert 2/4 hour (.50)
      d.      38 to 52 minutes - convert to 3/4 hour (.75)
      e.      53 to 59 minutes - convert to next full hour"

23. Even though Section "L" above makes Defendant's Kronos rounding commands appear to be neutral on their face, Defendant's corresponding disciplinary rules and clock use rules guarantee that the Kronos time clock rounding commands will favor Defendant virtually every time and harm plaintiffs, indeed an employee risks discipline and violation of Defendant's rules if he/she does not use the Kronos time clock as Defendant instructs. Again, employees are told in writing that "Employees must clock-in not earlier than seven minutes before the start of the shift, unless authorized to start work earlier and employees should not clock-out (quit work) later than 7 minutes after the end of the shift unless it is authorized by the employee's supervisor." With this 7 minute increment as the outlier, every Kronos time punch in will be rounded in Defendant's favor and the employee's detriment. In the same way, with this 7 minute increment as the outlier for every Kronos time punch out, all rounding of end of shift punches will occur in Defendant's favor and to the employees' detriment. Defendant's rounding practice is not neutral in its application.

24. Further, Defendant is rounding employee time punches and log in entries for Defendant's own financial benefit and for the sake of rounding alone. Defendant is not and has not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Moreover, as explained above, Plaintiff and each similarly situated coworker was working from each Kronos punch in until each Kronos punch out. Defendant has no records to show that its self-serving rounding occurred based upon any observation or determination by Defendant that an employee subjected to rounding was not working while on the clock during any shift. Defendant's records are the best and only records that show employees were working at all times punched in on Defendant's time clock.

Employees were working when punched in on Defendant's time clock.

25. Plaintiff will need to obtain Kronos time clock data and pay roll records in discovery to provide specific dates and specific amounts of work time that Defendant rounded and did not pay, but Plaintiff and every similarly situated class member was subjected to time clock rounding every work shift and every work week, resulting in unpaid wages and unpaid overtime every work week.

26. Specifically, Plaintiff worked many overtime hours for Defendant in calendar year 2024. Plaintiff expressly alleges and asserts that she was not paid for all time recorded on the Kronos clock and all time worked in every work week. This is particularly true based upon the combination of Defendant's computer programmed and non-neutral time clock punch rounding and its written policies.

27. Defendant's computer-programmed time rounding scheme, coupled with its disciplinary rules, harmed Plaintiff and Plaintiff's similarly situated coworkers in the same way on a company-wide basis every work week. This rounding scheme has been harming Defendant's employees for many years. Based upon information and belief, this time rounding scheme has been harming employees for three (3) or more years prior to the date this complaint has been filed. Plaintiff's unpaid wages for regular and overtime hours and her damages under the FLSA are representative of those owed to all of Defendant's workers subjected to the same time clock and pay roll software and same time punch rounding scheme.

28. Pursuant to its systematic, class-wide practices, Defendant is not compensating its hourly-paid employees for all time worked and recorded on a continuous work day basis.

29. All of Defendant's time rounding practices were intentionally computer programmed and performed to Defendant's advantage and the detriment and harm of Plaintiff

and all of Defendant's hourly-paid employees. Defendant's time punch rounding practices are not neutral, as required by the FLSA.

30. Defendant intentionally and knowingly violated its employees' rights to earned wages and earned overtime compensation through Defendant's illegal and non-neutral time rounding schemes and Defendant's conscious decision to shave recorded work time and pay employees less in wages and overtime than the employees earned while performing work for Defendant.

31. By way of this Complaint, Plaintiff seeks for herself and all other similarly situated hourly-paid employees all wages, all overtime compensation, liquidated damages, statutory damages, statutory penalties and all damages owed. Additionally, Plaintiff seeks payment of her attorney's fees, costs and expenses. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

### Regular Rate Facts

32. Throughout her employment with Defendant, Plaintiff was a non-exempt employee who was compensated by Defendant on an hourly-paid basis. At the time of her termination, Plaintiff's base hourly rate of pay was $55.00 per hour. During her employment with Defendant, Plaintiff regularly worked significant overtime hours (in excess of forty hours in a seven day work week).

33. When Defendant paid Plaintiff overtime compensation, it failed to include other categories of wages Defendant called 1) "Shift Differential," and 2) "Weekend Bonus" in Plaintiff's regular rate of pay and, in so doing, failed to include those categories of wages in the calculation of Plaintiff's overtime rates of pay. This resulted in Defendant's failure to pay Plaintiff her overtime wages at her full overtime rate of pay.

34. Defendant's failure to include earned categories of wages it called 1) "Shift Differential" and 2) "Weekend Bonus" in Plaintiff's and all of her similarly situated coworkers' regular rates of pay, resulted in the underpayment of Plaintiff and her similarly situated coworkers' overtime compensation in corresponding weeks, causing systematic and class-wide violations of the FLSA. Plaintiff will provide additional details about each category of wages in the paragraphs below.

35. Throughout most of her last three years of employment with Defendant, Plaintiff was paid additional, earned wages in categories Defendant called "shift differential" and "weekend bonus." The "shift differential" and "weekend bonus" wages were promised before the work was performed, were not discretionary payments, were definitely wages paid to induce Plaintiff and other similarly situated employees to work more steadily and efficiently, and were certainly wages paid as consideration for certain specific employee behavior, to wit, working on certain shifts and/or working on the weekend. These "shift differential" and "weekend bonus" wages were a lesser component of Plaintiff's compensation.

36. Defendant did not include Plaintiff's "shift differential" or "weekend bonus" wages in its computation of Plaintiff's overtime wages. This same failure was true for every other of Defendant's employees paid in the categories called "shift differential" and "weekend bonus." Specifically, Defendant did not include Plaintiff's "shift differential" and/or "weekend bonus" wages in its calculation of her regular rate of pay before calculating her overtime rate of compensation in weeks in which Plaintiff worked more than forty (40) hours, was owed overtime compensation and was also paid the wage Defendant called "shift differential" and/or "weekend bonus." This failure to include "shift differential" and "weekend bonus" in overtime compensation rates is readily seen in the pay stubs Defendant issued to Plaintiff and Defendant's other hourly paid employees.

37. Plaintiff can provide a specific example from 2024. During the pay period from November 25, 2024 to December 8, 2024, Plaintiff worked 89.0 hours. Defendant's pay stub to Plaintiff indicates that 9.75 of those 89.0 work hours were overtime hours during this two week pay period. Plaintiff was paid at her base rate of $55.00 for all 89.0 hours in that two weeks. Plaintiff was paid an additional overtime premium of $27.50 for each of the 9.75 overtime hours. The overall overtime rate Plaintiff was paid was $82.50 per hour and was equal to an amount that was one and one-half times Plaintiff's base rate of pay. Plaintiff was also paid $3.75 per hour for 11.25 hours in a category Defendant called "shift differential" and paid $11.00 per hour for 2.75 hours in a category Defendant called "weekend bonus." The shift differential and weekend bonus pay provided Plaintiff with additional earned income of $72.42 ($42.19 in shift differential pay and $30.25 in weekend bonus pay). This additional earned $72.42 in shift differential and weekend bonus pay was not included in Plaintiff's regular rate and, more specifically, was not included in Plaintiff's overtime rate of pay for the 9.75 overtime hours. At a minimum, Plaintiff's regular rate of pay should have been adjusted to $55.81 per hour ($0.81/hour higher) and her overtime rate should have been adjusted to $83.72 per overtime hour ($1.22 per overtime hour higher). In this particular pay period, Plaintiff was underpaid by at least $11.90. With liquidated damages presumptively awarded under the FLSA, Plaintiff will be owed FLSA damages of at least $23.80 for this one pay period.

38. This adjustment to her regular rate and her corresponding overtime rate should have been made every week Plaintiff worked overtime hours and was also paid a "shift differential and/or a "weekend bonus." Defendant's failure to include the "shift differential" and "weekend bonus" wages in the overtime premium calculation cost Plaintiff and every similarly situated coworker with Defendant overtime compensation on a regular basis. While this one

week amount may seem small, this failure to pay overtime in full occurred over many weeks in many years and caused Plaintiff and her coworkers to lose significant overtime wages.

39. Defendant has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly include wages Defendant calls 1) "shift differential" and 2) "weekend bonus" in regular rates of pay and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

40. Based upon its long-standing policy and practice of improperly calculating overtime compensation, Defendant has been systematically underpaying its non-exempt, hourly paid employees significant sums of overtime wages on a weekly basis. The aggregate sum of unpaid overtime for all of Defendant's hourly employees is very substantial on a weekly and on an annual basis.

41. Based upon information and belief, particularly when including employee turnover, Plaintiff estimates that Defendant applied its unlawful method of calculating and paying employees for overtime hours of work in a manner that affects thousands upon thousands of employees over a three year period.

42. Defendant has intentionally, knowingly, with reckless disregard and systematically violated Plaintiff's and her similarly situated coworkers' rights to earned overtime through Defendant's unlawful overtime calculation and payment policies.

## COLLECTIVE ACTION ALLEGATIONS

43. Plaintiff bring this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

44. The class that Plaintiff seeks to represent and for whom Plaintiff seeks the right to

send "opt-in" notices for purposes of the collective action, and of which Plaintiff herself is a member, is composed of and defined as follows:

> **All current and former employees of Community Health Network who were 1) were subjected to Defendant's rounding of Kronos time clock punches and/or 2) were not paid overtime at their full regular rate in one or more week at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**.

45. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as her own in bringing this action.

46. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT ONE
**(FLSA Overtime Violations)**

47. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

48. Plaintiff and other similarly situated employees were not paid for hours worked and recorded on Defendant's Kronos time clock as a result of Defendant's non-neutral and computer programmed rounding scheme that resulted in unpaid wages to employees.

49. Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

50. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for work time recorded on Defendant's Kronos time clocks resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

51. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

52. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received overtime wages due to them pursuant to the FLSA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all persons similarly situated, pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiff and the Opt-Ins who join this case pursuant to the FLSA;

C. Award Plaintiff and the putative class actual damages for unpaid wages;

D. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA);

E. Award Plaintiff and the Opt-In Class all liquidated damages, statutory damages, attorney's fees, costs and expenses for FLSA violations;

F.  Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

                Respectfully submitted,

/s/Robert P. Kondras Jr.
Robert P. Kondras, Jr. (18038-84)
**HASSLER KONDRAS MILLER LLP**
100 Cherry St.
Terre Haute, IN 47807
Telephone: 812-232-9691
Facsimile: 812-234-2881
Email: kondras@hkmlawfirm.com


/s/Robert J. Hunt
Robert J. Hunt (#30686-49)
**The Law Office of Robert J. Hunt, LLC**
1905 South New Market Street, Ste 168
Carmel, IN 46032
Telephone:  (317) 743-0614
Facsimile:  (317) 743-0615
E-mail: rob@indianawagelaw.com

*Attorneys for Plaintiffs*