**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **ALISON M. PLAHITKO and TIFFANY N. JACKSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**COMMUNITY HEALTH NETWORK, INC.**<br><br>Defendant. | ) | Case No. 1:25-cv-00520-JPH-TAB<br><br>**CLASS ACTION COMPLAINT**<br><br>**FLSA COLLECTIVE ACTION COMPLAINT** |

***PLAINTIFFS' FIRST AMENDED[1] COMBINED RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES***

Plaintiffs Alison M. Plahitko ("Plahitko") and Tiffany N. Jackson ("Jackson") (or hereinafter collectively "Plaintiffs"), individually and on behalf of all others similarly situated, for their Complaint against Defendant Community Hospital Network ("Defendant"), state and allege as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* the Indiana Wage Payment Statute ("IWPS"), I.C. 22-2-5, and the Indiana Wage Claims Statute ("IWCS"), I.C. 22-2-9.

2. Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiffs bring this case

[1]Plaintiffs amend this complaint to add Tiffany N. Jackson as a named plaintiff and proposed Rule 23 class representative. Plaintiffs file this Amended Complaint with Defendant's written consent pursuant to FRCP 15(a)(2). At present, Defendant has not yet filed a responsive pleading.

individually and on behalf of other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiff Jackson also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IWPS on behalf of other employees employed by Defendant in the State of Indiana. Plaintiff Jackson's IWPS class action claims focus upon Defendant's failure to pay wages in full and on time based upon Defendant's unlawful and non-neutral Kronos time clock punch rounding schemes, including the rounding of Kronos time clock punches in at the beginning of a shift, out at the end of a work shift, and the application of an automatically deducted meal break period of a certain duration (generally, 30 minutes) when meal break durations (time out and time back in) were not recorded and Defendant routinely took automatically deducted time from Plaintiffs' time recorded on the Kronos time clock whether or not a Plaintiff took a meal break at all, whether or not a Plaintiff entered data to advise the Defendant that the Plaintiff's meal break was missed or interrupted, and regardless of the duration of the meal break (e.g., less than 30 minutes in length).

4. Finally, Plaintiff Plahitko brings her individual claim pursuant to the IWCS. Plaintiff Plahitko's IWCS claims focus upon Defendant's failure to pay wages in full and on time based upon Defendant's unlawful and non-neutral Kronos time clock punch rounding schemes, including the rounding of Kronos time clock punches in at the beginning of a shift and rounding out at the end of a work shift.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because those state law wage claims are so related to the FLSA claims to form part of the same case or controversy.

6. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiffs in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Division.

**PARTIES**

7. Plaintiff Plahitko is an adult individual residing in Indianapolis, Marion County, Indiana. Plaintiff Plahitko was employed by Defendant as a nurse in and around the Indianapolis, Marion County, Indiana area from October 2002 until Defendant involuntarily terminated Plahitko's employment on January 24, 2025. In her last position, Plahitko worked for Defendant as a FMLA Case Manager.

8. Plaintiff Jackson is an adult individual residing in Indianapolis, Marion County, Indiana. Plaintiff Jackson was employed by Defendant in a registration position at Community North Hospital from approximately March 2023 until the date that Plaintiff Jackson voluntarily resigned her employment in June 2024.

9. Within the two years and within the three years preceding the filing of this Action, both Plaintiffs Plahitko and Jackson were employed by Defendant as non-exempt employees who were paid on an hourly basis.

10. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. § 203(e). Plaintiff Jackson was an employee within the meaning of the IWPS at all relevant times. Plaintiff Plahitko was an employee within the meaning of the IWCS at all relevant times.

11. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d). At all relevant times, Defendant was an employer and subject to both the IWPS and IWCS.

12. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

13. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

14. Prior to the filing of this Amended Complaint, Plaintiffs Plahitko [Dkt. 8.] and Jackson [Dkt. 24.] filed with the Court their written Consents to Join this Action.

## FACTUAL ALLEGATIONS

15. Defendant provides healthcare services at approximately 200 locations, including hospitals throughout the State of Indiana. Defendant is believed to be headquartered at 1500 North Ritter, Indianapolis, Indiana 46219.

### Unlawful Rounding of Kronos Time Clock Punch Facts

16. At all times relevant to this action, all of the Plaintiffs' and their similarly situated coworkers' compensable work time was recorded on Defendant's Kronos time clocks. While all recorded, compensable work hours were recorded on Defendant's Kronos time clock, Defendant rounded those Kronos time punches and did not pay wages for all compensable and recorded work time.

17. Plaintiffs and their similarly situated coworkers are and were common victims of Defendant's compensation scheme whereby it illegally and impermissibly rounded time clock punches and log in entries in its favor and in a manner that failed to pay Plaintiffs and all similarly situated coworkers for significant compensable work hours.

18. Defendant has created a compensation scheme through a series of computer software commands (time punch rounding commands) programmed into Defendant's time clock software and payroll software, coupled with multiple company disciplinary rules regarding Kronos clock usage and tardiness that ensure that Defendant will always benefit from its time punch rounding scheme and guarantee that Defendant will take an impermissible and unfair financial advantage over its employees by rounding in a non-neutral fashion that results in

enormous sums of unpaid hourly wages owed to Defendant's hourly paid employees on a cumulative basis.

19. At all times relevant, for Plaintiffs and all of Defendant's hourly-paid employees, Defendant used and uses an electronic time keeping system. Employees clock in by swiping employee badges in a computerized time clock or logging in to a program on a computer. Using this time clock or log in function, for each shift, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ended his/her work shift. If Defendant paid its non-exempt, hourly-paid employees wages and overtime based upon its machine(s)' actual time punches and log in entries, Defendant would likely have paid wages in compliance with the FLSA, the IWPS and the IWCS.

20. Defendant does not pay its employees' hourly-paid wages based upon actual employee time worked and based upon Defendant's own time punch/log in records.

21. Importantly, Defendant does not record its non-exempt, hourly-paid employees' work time in any other way. The only time records Defendant has to base its payment of wages on are the time records generated by its electronic time clocks and programs.

22. Defendant has created a policy and practice whereby it significantly adjusts downward and shaves time from its non-exempt, hourly-paid employees' time records and pays its employees wages for less than their full time worked and full time reported on Defendant's own time clocks and computer programs.

23. Based upon its long-standing policy and practice of manipulating and downwardly adjusting time from its non-exempt, hourly-paid employee time records, Defendant has been systematically underpaying its employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendant's Indiana employees based upon Defendant's non-neutral and self-serving rounding scheme is very substantial on a daily, weekly and annual basis.

24. Defendant's rounding can be determined from the face of Defendant's employees' time punch records and corresponding pay stubs. Defendant rounds all time punches and log in entries in its favor and to employees' detriment through a series of computer program commands written in the Kronos software along with a series of written rules distributed to employees governing discipline and Kronos time clock use. All rounding functions are programmed into Defendant's time clock and corresponding pay roll software and all rounding functions favor Defendant and harm employees.

25. Defendant's written Kronos time clock rules and disciplinary rules distributed to Plaintiffs and their similarly situated coworkers include the following policies:

"Preparation, Verification, and Submission of Employee Time Record

POLICY STATEMENTS:

It is the policy of Community Health Network that:

- the Kronos timecard is the official record of hours worked for Community employees and determines the amount of pay the employee shall receive. The timecard is also the official records of hours absent from regularly scheduled work and utilization of sick time.

- Cost center managers are responsible to ensure that all time for their employees is accurately recorded and coded on Kronos timecard in accordance with approved Human Resources Policy and Procedure.

- Employees are responsible for reporting and recording their time in accordance with procedures established in their department.

d. **Non-Exempt status employees** must maintain a time record that reflects all their hours for the pay period. Employees paid on the basis of hours worked are required to clock-in and clock-out by swiping their ID Badge at the assigned time clock, or by telephone or web access if appropriate. Federal and state regulations require that the timecard accurately reflect the time the employee started work and the time the employee stopped work. Employees are to clock out when they leave work (example: leave workplace for a break, meal, doctor's appointment) and clock in when they return. Do not omit time worked under any circumstance. An employee on LOA (or not working for some reason) needs to have 80 hours if 1.0 FTE (or fte equivalent) of exception time such as PTO Sick or Absent Without Pay, etc. recorded in Kronos.

G. Time-Clock Punches: Employees must clock-in not earlier than seven minutes before the start of the shift, unless authorized to start work earlier and employees should not clock-out (quit work) later than 7 minutes after the end of the shift unless it is authorized by the employee's supervisor.

L. Time Entered on Kronos: Kronos will automatically calculate time worked to the nearest 1/4 hour based on the clock-in and clock-out time and the employee's Pay Rule. Other time that is entered by the Editor/Approver should be entered as hours and minutes to the closest 1/4 hour (i.e. 4 ½ hours should be entered as 4.50). Convert time added in Kronos to the closest 1/4 hours as follows:

a. 1 to 7 minutes - do not covert. Enter full hour
b. 8 to 22 minutes - convert to 1/4 hour (.25)
c. 23 to 27 minutes - convert 2/4 hour (.50)
d. 38 to 52 minutes - convert to 3/4 hour (.75)
e. 53 to 59 minutes - convert to next full hour"

26. Even though Section "L" above makes Defendant's Kronos rounding commands appear to be neutral on their face, Defendant's corresponding disciplinary rules and clock use rules guarantee that the Kronos time clock rounding commands will favor Defendant virtually every time and harm plaintiffs, indeed an employee risks discipline and violation of Defendant's rules if he/she does not use the Kronos time clock as Defendant instructs. Again, employees are told in writing that "Employees must clock-in not earlier than seven minutes before the start of the shift, unless authorized to start work earlier and employees should not clock-out (quit work) later than 7 minutes after the end of the shift unless it is authorized by the employee's supervisor." With this 7 minute increment as the outlier, every Kronos time punch in will be rounded in Defendant's favor and the employee's detriment. In the same way, with this 7 minute increment as the outlier for every Kronos time punch out, all rounding of end of shift punches will occur in Defendant's favor and to the employees' detriment. Defendant's rounding practice is not neutral in its application.

27. Further, Defendant is rounding employee time punches and log in entries for Defendant's own financial benefit and for the sake of rounding alone. Defendant is not and has not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Moreover, as explained above, Plaintiffs

and each similarly situated coworker was working from each Kronos punch in until each Kronos punch out. Defendant has no records to show that its self-serving rounding occurred based upon any observation or determination by Defendant that an employee subjected to rounding was not working while on the clock during any shift. Defendant's records are the best and only records that show employees were working at all times punched in on Defendant's time clock. Employees were working when punched in on Defendant's time clock.

28. On a class-wide basis, Plaintiffs will need to obtain Kronos time clock data and pay roll records in discovery to provide specific dates and specific amounts of work time that Defendant rounded and did not pay, but Plaintiff and every similarly situated class member was subjected to time clock rounding every work shift and every work week, resulting in unpaid wages and unpaid overtime every work week.

29. That said, Plaintiff Jackson has some Kronos records and some itemized pay stubs from her employment with Defendant. Jackson can provide a specific work week example whereby she shows underpayment of wages and overtime caused by Defendant's unlawful rounding.

30. As stated above, Defendant's rounding can be determined from the face of its employees' time punch records and corresponding pay stubs. Defendant rounds all time punches in its favor and to employees' detriment in at least two (2) ways: <u>First</u>, Defendant automatically deducts 0.5 hours from the time clock punches measuring every shift worked by every hourly-paid employee, taking the cumulative amount of time from each employee's punch in at the first principal work activity of each shift through the employee's punch out at the last principal activity of the shift and then subtracting from that cumulative total a full 0.5 hour amount. This amount is deducted automatically from each employee's recorded work hours every shift regardless of whether the employee is provided a bona fide meal period and regardless of the actual length of any meal period (e.g., was the meal period less than 30 minutes?, was the meal

period less than 20 minutes?). Further, Plaintiff Jackson can assert from personal experience on many occasions, that Plaintiff Jackson reported to Defendant on the Kronos time clock by responding "No" when asked to state whether she was able to take a meal break. Even with a "NO" response, Defendant would still automatically deduct 0.5 hours of work time from Jackson's time clock punches and not pay her for work time on days Jackson did not get to take a bona fide meal break. Second, from each employee's time punches which have already been reduced by a full 0.5 hours, Defendant further reduces the net cumulative time downward in Defendant's favor by setting upon a scheme whereby Defendant rounds to the nearest quarter (O.25) of an hour, but sets up disciplinary rules that only permit rounding to benefit the Defendant - or cause discipline to the employee if rounding would theoretically benefit the employee.

31. Defendant further rigs its rounding scheme in its own favor through a series of time clock use and disciplinary rules that further guarantee all rounding will occur in a way that favors Defendant and works to the detriment of employees. For example, employees are only permitted to clock in for a shift at a moment that is seven (7) or fewer minutes before the start of a shift. However, if an employee clocks in late, the employee is subject to be disciplined with a tardiness point or half-point. These same disciplinary rules apply to any meal period. If an employee misses altogether or has a meal period that lasts less than 30 minutes, Defendant rounds up in its favor and automatically deducts from the employee's recorded work hours a full 0.5 hours from the employee's cumulative work hours recorded on the time clock. However, if an employee takes a meal period and is late returning from a meal period (e.g., as little as one (1) more than 30 minutes for a meal period), the employee is assessed discipline under the disciplinary point system (e.g., a half point or a point for tardiness).

32. Defendant's automatically deducted 0.5 hour amounts for purported meal periods further create FLSA and Indiana statutory wage law violations as 1) Defendant does not keep

sufficient records of whether a meal period was taken by an employee before automatically deducting a full 0.5 hours from that employee's recorded work time for the shift, 2) Defendant does not record or keep records of the duration of any meal period taken by an employee for any meal period (e.g., punch out to start the meal and punch back in to return to work duties) before deducting a full 0.5 hours from that employee's recorded work time for the shift, and 3) Defendant ignores its data that would otherwise enable an employee to request that Defendant forego an automatic 0.5 hour deduction from recorded work time because the employee did not get a meal break or had a meal period cut shorter than 30 minutes. This is particularly unlawful and problematic when an employee had any meal period that was 20 minutes or less in duration, as the FLSA has a bright line rule that any break in time of 20 minutes or less is work time and must be compensated.

33. Plaintiff Jackson specifically alleges and asserts that she and her similarly situated hourly-paid coworkers routinely missed meal breaks altogether and also had meal periods during work shifts for Defendant that lasted significantly less than 30 minutes. Regardless of length of meal period or whether a meal period occurred, Defendant rounded the meal break up to 0.5 hours and automatically deducted 0.5 hours from every shift Jackson worked and every shift other hourly-paid employees worked.

34. Further, Defendant is rounding employee time punches for Defendant's own benefit and for the sake of rounding alone. Defendant is not and has not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Defendant has no records to show that its self-serving rounding occurred based upon any observation or determination by Defendant that an employee subjected to rounding was not working while on the clock during any shift. Defendant's records are the best and only records that show employees were working at all times punched in on Defendant's Kronos time clock. Employees were working when punched in on Defendant's Kronos time clock.

35. To provide a specific and representative example of this one-sided, unlawful rounding scheme applied by Defendant, Plaintiff Jackson submits time punch and rounding data from Defendant's records for her week worked for Defendant from Monday May 1, 2023 through Sunday May 7, 2023. Defendant's time clock records show that Jackson worked the following dates and times:

| Date | In | Out | Actual Hours | Rounded (Paid) | Unpaid Hours |
|---|---|---|---|---|---|
| Thurs 5/4 | 9:01 PM | 7:32 AM | 10:31 Hrs. | 10:00 Hrs. | 0:31 Hrs. |
| Fri 5/5 | 8:55 PM | 7:28 AM | 10:33 Hrs. | 10:00 Hrs. | 0:33 Hrs. |
| Sat 5/6 | 9:00 PM | 7:26 AM | 10:26 Hrs. | 10:00 Hrs. | 0:26 Hrs. |
| Sun 5/7 | 8:54 PM | 7:37 AM | 10:43 Hrs. | 10:00 Hrs. | 0:43 Hrs. |
| **TOTALS Paid by NAL** | | | **42:13 Hrs.** | **40:00 Hrs.** | **2:13 Hrs.** |

Jackson worked overtime hours this work week. The 2:13 unpaid hours are 2.2167 unpaid hours and, indeed, 2.2167 unpaid overtime hours. Jackson's rate of pay in 2023 was approximately $16.00 per hour. Her overtime rate of pay would be $24.00/hour. Defendant has no records as to the start or end time of any meal break, if any occurred on any shift. Instead, Defendant automatically took 0.5 hours from each of Jackson's recorded hours for each shift and then rounded time entries down to a sum that Defendant used to pay Jackson. For her claim under the FLSA, Jackson lost $53.20 (2.2167 overtime hours x $24.00) in overtime pay and, with liquidated damages presumed under the FLSA, Jackson is owed damages of $106.40 for this one week alone. For her claim under the IWPS, Jackson lost $35.47 (2.2167 hours x $16.00) in wages and, with IWPS liquidated damages, Jackson is owed $106.40 for this one week. Jackson further notes that, even without the 0.5/shift of automatic deductions, Defendant rounded 0:13 overtime hours from Jackson's time worked. With just 0:13 unpaid overtime (0.2167 overtime hours) for the work week, for her claim under the FLSA, Jackson lost $5.20 (0.2167 hours x $24.00) in overtime pay and, with liquidated damages presumed under the FLSA, Jackson is owed damages of $10.40 for this one week. For her claim under the IWPS, Jackson lost $3.47

(0.2167 hours x $16.00) in wages and, with liquidated damages, Jackson is owed $10.40 for this one week.

36. Defendant's computer-programmed time rounding scheme, coupled with its disciplinary rules, harmed Plahitko, Jackson, and all of their similarly situated coworkers in the same way on a company-wide basis every work week. This rounding scheme has been harming Defendant's employees for many years. Based upon information and belief, this time rounding scheme has been harming employees for three (3) or more years prior to the date the original complaint was filed. Plahitko and Jackson's unpaid wages for regular and overtime hours and their damages under the FLSA, IWPS and/or IWCS are representative of those owed to all of Defendant's Indiana-based workers subjected to the same time clock and pay roll software and same time punch rounding scheme.

37. Pursuant to its systematic, class-wide practices, Defendant is not compensating its hourly-paid employees for all time worked and recorded on a continuous work day basis.

38. All of Defendant's time rounding practices were intentionally computer programmed and performed to Defendant's advantage and the detriment and harm of Plahitko, Jackson and all hourly-paid and non-exempt employees. Defendant's time punch rounding practices are not neutral, as required by the FLSA and corresponding Indiana law.

39. Defendant intentionally and knowingly violated its employees' rights to earned wages and earned overtime compensation through Defendant's unlawful and non-neutral time rounding schemes and Defendant's conscious decision to shave recorded work time and pay employees less in wages and overtime than the employees earned while performing work for the Defendant.

40. By way of this Complaint, Plaintiffs seek for themselves and all other similarly situated hourly-paid employees all wages, all overtime compensation, liquidated damages, statutory damages, statutory penalties and all damages owed. Additionally, Plaintiffs seek

payment of their attorney's fees, costs and expenses. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA, IWPS and IWCS.

**Regular Rate Facts**

41. Throughout her employment with Defendant, Plaintiff Plahitko was a non-exempt employee who was compensated by Defendant on an hourly-paid basis. At the time of her termination, Plahitko's base hourly rate of pay was $55.00 per hour. During her employment with Defendant, Plahitko regularly worked significant overtime hours (in excess of forty hours in a seven-day work week). In the same way, throughout her employment with Defendant, Plaintiff Jackson was a non-exempt employee who was compensated by Defendant on an hourly-paid basis. At the time of her voluntary resignation, Jackson's base hourly rate of pay was $16.60 per hour. During her employment with Defendant, Jackson regularly worked overtime hours (in excess of forty hours in a seven-day work week).

42. When Defendant paid Plahitko and Jackson overtime compensation, it failed to include other categories of wages, including categories of wages Defendant called 1) "Shift Differential," and 2) "Weekend Bonus" in Plaintiffs' regular rate of pay and, in so doing, failed to include those categories of wages in the calculation of Plaintiffs' overtime rates of pay. This resulted in Defendant's failure to pay Plaintiffs their overtime wages at their full overtime rate of pay.

43. Defendant's failure to include many earned categories of wages, including categories it called 1) "Shift Differential" and 2) "Weekend Bonus" in Plaintiffs' and all of their similarly situated coworkers' regular rates of pay, resulted in the underpayment of Plaintiffs and their similarly situated coworkers' overtime compensation in corresponding weeks, causing systematic and class-wide violations of the FLSA. Plaintiffs will provide additional details about each category of wages in the paragraphs below.

44. For example, throughout most of her last three years of employment with Defendant, Plaintiff Plahitko was paid additional, earned wages in categories Defendant called "shift differential" and "weekend bonus." The "shift differential" and "weekend bonus" wages were promised before the work was performed, were not discretionary payments, were definitely wages paid to induce Plaintiff and other similarly situated employees to work more steadily and efficiently and were certainly wages paid as consideration for certain specific employee behavior, to wit, working on certain shifts and/or working on the weekend. These "shift differential" and "weekend bonus" wages were a lesser component of Plaintiff's compensation.

45. Defendant did not include Plahitko's "shift differential" or "weekend bonus" wages in its computation of Plahitko's overtime wages. This same failure was true for every other of Defendant's employees paid in the categories called "shift differential" and "weekend bonus." Specifically, Defendant did not include Plahitko's "shift differential" and/or "weekend bonus" wages in its calculation of her regular rate of pay before calculating her overtime rate of compensation in weeks in which Plahitko worked more than forty (40) hours, was owed overtime compensation and was also paid the wage Defendant called "shift differential" and/or "weekend bonus." This failure to include "shift differential" and "weekend bonus" in overtime compensation rates is readily seen in the pay stubs Defendant issued to Plahitko, Jackson and Defendant's other hourly paid employees.

46. Plahitko can provide a specific example from 2024. During the pay period from November 25, 2024 to December 8, 2024, Plahitko worked 89.0 hours. Defendant's pay stub to Plahitko indicates that 9.75 of those 89.0 work hours were overtime hours during this two week pay period. Plahitko was paid at her base rate of $55.00 for all 89.0 hours in that two weeks. Plahitko was paid an additional overtime premium of $27.50 for each of the 9.75 overtime hours. The overall overtime rate Plahitko was paid was $82.50 per hour and was equal to an amount that was exactly one and one-half times Plahitko's base rate of pay. Plahitko was also paid $3.75

per hour for 11.25 hours in a category Defendant called “shift differential” and paid $11.00 per hour for 2.75 hours in a category Defendant called “weekend bonus.” The shift differential and weekend bonus pay provided Plahitko with additional earned income of $72.42 ($42.19 in shift differential pay and $30.25 in weekend bonus pay). This additional earned $72.42 in shift differential and weekend bonus pay was not included in Plahitko’s regular rate and, more specifically, was not included in Plahitko’s overtime rate of pay for the 9.75 overtime hours. At a minimum, Plahitko’s regular rate of pay should have been adjusted to $55.81 per hour ($0.81/hour higher) and her overtime rate should have been adjusted to $83.72 per overtime hour ($1.22 per overtime hour higher). In this particular pay period, Plahitko was underpaid by at least $11.90. With liquidated damages presumptively awarded under the FLSA, Plahitko will be owed FLSA damages of at least $23.80 for this one pay period.

47. This adjustment to her regular rate and her corresponding overtime rate should have been made every week Plahitko worked overtime hours and was also paid a “shift differential and/or a “weekend bonus.” Defendant’s failure to include the “shift differential” and “weekend bonus” wages in the overtime premium calculation cost Plahitko, Jackson and every similarly situated coworker with Defendant overtime compensation on a regular basis. While this one week amount may seem small, this failure to pay overtime in full occurred over many weeks in many years and caused Plahitko and her coworkers to lose significant overtime wages.

48. Defendant has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly include wages Defendant calls 1) “shift differential” and 2) “weekend bonus" in regular rates of pay and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

49. Based upon its long-standing policy and practice of improperly calculating overtime compensation, Defendant has been systematically underpaying its non-exempt, hourly paid employees significant sums of overtime wages on a weekly basis. The aggregate sum of

unpaid overtime for all of Defendant's hourly employees is very substantial on a weekly and on an annual basis.

50. Based upon information and belief, particularly when including employee turnover, Plahitko and Jackson estimate that Defendant applied its unlawful method of calculating and paying employees for overtime hours of work in a manner that affects thousands upon thousands of employees over a three-year period.

51. Defendant has intentionally, knowingly, with reckless disregard and systematically violated Plaintiffs' and their similarly situated coworkers' rights to earned overtime through Defendant's unlawful overtime calculation and payment policies.

**COLLECTIVE ACTION ALLEGATIONS (With Plahitko and Jackson as Representative Plaintiffs)**

52. Plaintiffs Plahitko and Jackson bring this action on their own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

53. The class that Plahitko and Jackson seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> **All current and former employees of Community Health Network who were 1) were subjected to Defendant's rounding of Kronos time clock punches and/or 2) were not paid overtime at their full regular rate in one or more week at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**.

54. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are

representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

55. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS BROUGHT UNDER THE INDIANA WAGE PAYMENT STATUTE (for Kronos Time Clock Rounding Violations with Jackson as the Rule 23 Class Representative)

56. Jackson brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all a class of persons employed by Defendant in Indiana within the last two years prior to the date the original complaint was filed ("IWPS Class") defined as:

> **All current and former employees of Community Health Network employed at one or more of Defendant's locations in the State of Indiana who were paid on an hourly basis and used time clocks provided by Community Health Network at any time during the two (2) years preceding the date of the filing of this Action to the present.**

57. The class is so numerous that joinder of all class members is impracticable. Jackson is unable to state the exact size of the potential IWPS Class but, upon information and belief, avers that it consists of well over ten thousand (10,000) people.

58. There are questions of law or fact common to the IWPS Class including: whether Defendant failed to pay its employees for all work time recorded on Defendant's own time clock (which Defendant unlawfully and non-neutrally rounded down in its own favor and did not fully pay), and whether that resulted in the underpayment of wages.

59. Jackson will adequately protect the interests of the IWPS Class. Her interests are not antagonistic to but, rather, are in unison with, the interests of the IWPS Class members. Jackson's attorneys have broad experience in handling class action wage-and-hour litigation and both are fully qualified to prosecute the claims of the IWPS Class in this case.

60. The questions of law or fact that are common to the IWPS Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the IWPS Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring IWPS Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many IWPS Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**

**(FLSA Overtime Violations)**

62. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

63. Plaintiffs and other similarly situated employees were not paid for hours worked and recorded on Defendant's Kronos time clock as a result of Defendant's non-neutral and computer-programmed rounding scheme that resulted in unpaid wages to employees.

64. Plaintiffs and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

65. Defendant's practice and policy of not paying Plaintiffs and other similarly situated employees for work time recorded on Defendant's Kronos time clocks resulted in Defendant's failure to pay Plaintiffs and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in

excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

66. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

67. As a result of Defendant's practices and policies, Plaintiffs and other similarly situated employees have been damaged in that they have not received overtime wages due to them pursuant to the FLSA.

**COUNT TWO**
**(Indiana Wage Payment Statute Violations)**

68. Jackson incorporates by reference the foregoing allegations as if fully rewritten herein.

69. Jackson and other similarly situated employees were not paid for work time recorded on Defendant's Kronos time clock, including time recorded at the beginning of a work shift, time recorded at the end of a work shift, and time working through any supposed meal break. Jackson and her fellow Plaintiffs were not paid for this recorded work time as a result of Defendant's computer programmed and non-neutral Kronos time clock rounding schemes.

70. Jackson has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and she is the Plaintiff who represents the same or similar interests of all current Community Health Network hourly-paid employees and all of Community Health Network's former hourly-paid employees who voluntarily resigned from employment.

71. By way of this Claim, Jackson is seeking, individually and on behalf of members of the Plaintiff Class of current and former Community Health Network employees, all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Jackson and her fellow Plaintiff Class members may be entitled pursuant to law. Pursuant to I.C. 22-2-5-2, Jackson is seeking, individually and on behalf of members of the Plaintiff Class, payment of

unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as additional monetary damage, plus all attorney's fees, costs and expenses.

72. Jackson is expressly alleging that Defendant did not act in good faith when it failed to pay wages to Jackson and the Plaintiff Class. Jackson is expressly alleging that Defendant acted in bad faith when it failed to pay all recorded and earned wages to Jackson and the Plaintiff Class.

**COUNT THREE**

**(Plahitko's Individual Indiana Wage Claims Statute Claims)**

73. Plahitko incorporates by reference the foregoing allegations as if fully rewritten herein.

74. Plahitko was involuntarily terminated from employment by Defendant. As such, Plahitko's state law wage claims to recover illegally rounded and unpaid wages arise under the Indiana Wage Claims Statute, I.C. 22-2-9. Plahitko obtained a letter from the Indiana Attorney General's Office dated May 14, 2025 which permits her attorney to file this wage claim on Plahitko's behalf as the Indiana Attorney General's "designee." To the extent she cannot do so in a class action context, Plahitko is still pursuing any and all claims for damages under the Indiana Wage Claims Statute, I.C. 22-2-9, to recover unpaid wages caused by unlawful Kronos time punch rounding.

75. By way of this Claim, Plahitko is seeking all available damages, including all unpaid wages, all underpaid wages, all available liquidated, punitive and/or treble damages, all attorney's fees, costs and expenses, plus any other damage to which Plahitko may be entitled pursuant to law. Pursuant to I.C. 22-2-9-4, which incorporates I.C. 22-2-5-2, Plahitko is seeking payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's

fees, costs and expenses. As alleged above, Plahitko asserts that Defendant was not acting in good faith and, in fact, acted in bad faith when it rounded her Kronos time clock punches systematically and did not pay Plahitko all of her hours worked.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Plahitko and Jackson, on behalf of themselves and all persons similarly situated, pray that this Honorable Court:

1. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under FRCP 23 as to the Indiana Wage Payment Statute Class

C. Enter judgment against Defendant and in favor of Plaintiffs and the Opt-Ins who join this case pursuant to the FLSA, the IWPS and the IWCS;

D. Award Plaintiffs and the putative class actual damages for unpaid wages and overtime compensation;

E. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA and all liquidated damages under the IWPS and IWCS);

F. Award Plaintiffs and the Opt-In Class all liquidated damages, statutory damages, attorney's fees, costs and expenses for FLSA violations;

G. Award Plaintiff Jackson and all IWPS Class Members all unpaid wages, all liquidated and statutory damages, attorney's fees costs and expenses for IWPS violations;

H. Award Plaintiffs and the putative class attorney's fees, costs and disbursements; and

I. Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/Robert P. Kondras Jr.

Robert P. Kondras, Jr. (18038-84)
**HASSLER KONDRAS MILLER LLP**
100 Cherry St.

Terre Haute, IN 47807
Telephone: 812-232-9691
Facsimile: 812-234-2881
Email: kondras@hkmlawfirm.com

/s/Robert J. Hunt
Robert J. Hunt (#30686-49)
**The Law Office of Robert J. Hunt, LLC**
1905 South New Market Street, Ste 168
Carmel, IN 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
E-mail: rob@indianawagelaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed electronically on June 19, 2025. Notice of this filing will be sent to the parties by operation of the Court's electronic notification system. Parties may access this filing through the Court's system.

/s/ Robert P. Kondras, Jr.
Robert P. Kondras, Jr.